FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2006 AUG 31  AM 9: 40

CLERK_____
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CV205-158 |
| | ) | |
| LESLIE ERNEST GORDON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

The United States filed this civil action seeking declaratory and injunctive relief against defendants (all present or former inmates confined at the Federal Correctional Institution in Jesup, Georgia), who have filed or attempted to file certain baseless "liens," Uniform Commercial Code ("UCC") Financing Statements, and other similar instruments against various federal officials and other individuals. Doc. 1. The purported "liens" and other documents prepared by defendants are the centerpiece of a malicious campaign launched against the federal judiciary and the prosecutors who handled defendants' criminal cases. These so-called "liens," which defendants have submitted for filing with various federal and

state courts and other governmental entities, have no legal foundation and are simply intended to harass the individuals named as "debtors" and to interfere with the their ability to perform their official duties. The government seeks an order declaring that the various liens submitted for filing by defendants are null, void, and of no legal effect and requests a permanent injunction preventing defendants from attempting to record or file any further "liens" of this nature.

Before the Court is the government's motion for summary judgment, which points out that defendants have failed to demonstrate any factual basis or legal foundation for any of their purported "liens" and seeks judgment as a matter of law because all the purported liens are utterly frivolous and represent a malicious attempt to harass public officials. Doc. 118. The government's motion is clearly meritorious and should be GRANTED.

## I. Background

Defendants, utilizing the United States Postal Service, have filed numerous documents which purport to be liens and/or UCC Financing

Statements in the records of various federal and state courts and other governmental entities across the country. Docs. 1, 118. These liens and financing statements name federal officers and employees engaged in their official duties as "debtors," despite the fact that defendants have neither secured a judgment against these officers nor demonstrated any underlying commercial relationship between these officials and defendants.[1] Rather, defendants have seized upon some sort of social contract theory known as "redemption," which defendants contend allows them to file "liens" and other similar instruments against the federal officials responsible for their criminal convictions in an apparent attempt to secure their freedom or, at best, harass the officials they blame for depriving them of their liberty.

Defendants rely solely on this "redemption theory" to justify the filing of these liens and offer no statutory, constitutional, or common law support

---

[1] For example, defendant Gordon sent a letter to the Office of the United States Attorney for the Southern District of Georgia on July 6, 2005, requesting his "Treasury Direct Account" balance be increased by $4,000,000. Doc. 1. Gordon supported this request by including a Financing Statement filed on May 9, 2005 with the Washington State Department of Licensing naming himself as both "secured party" and "debtor," as well as two documents entitled "SURETY BOND," notarized in Long County, Georgia, which purport to create a $40,000,000 debt for William B. Johnson, Gordon's attorney in his criminal case, and Assistant United States Attorney Frederick Kramer III. Id. The Financing Statement lacked an intelligible underlying security agreement. Id.

for their actions. As defendants have not shown the existence of any judgment against the individuals named as "debtors" in these documents (or any past commercial relationship with any of the so-called "debtors"), these filings lack any conceivable legal basis and are utterly frivolous. The United States filed the instant action seeking declaratory and injunctive relief against defendants in order to protect its employees from further harassment and attempted extortion. Doc. 1. The government asserts that such frivolous filings "impose irreparable injury upon the United States by interfering with the enforcement of criminal laws of the United States and by interrupting, hindering, obstructing, impairing, and impeding federal officials in the discharge of their duties." Id. The government further contends that such baseless liens can hinder these officials in their personal financial transactions and cause personal embarrassment to those officials as they attempt to clear their credit histories. Id.

The Court issued a Temporary Restraining Order on August 5, 2005 preventing defendants from (1) taking any action designed to give notice of any existing "liens" or other similar instruments by any defendants without express permission from the Court and (2) taking any action in any state or

federal jurisdiction toward filing or giving notice of any further "liens" or other similar instruments against any federal employee without proof of a valid judgment from a court of competent jurisdiction supporting such a lien or instrument without prior express authorization from the Court. Doc. 7. The Court also warned defendants of the potential consequences for disregarding the Court's Order. Id. The Court subsequently granted a preliminary injunction on August 25, 2005, preventing each defendant from taking any of the above actions until the instant case was resolved on the merits. Doc. 38.

Defendants failed to file an answer to the government's complaint, thereby prompting the government to file a motion to sequence discovery. Doc. 57. The Court granted the motion and directed each defendant to "file with the Court: (1) any judgment obtained in a court of competent jurisdiction; or (2) any evidence of an underlying commercial relationship with a federal employee that would justify filing of a 'lien' and/or UCC Financing Statement." Doc. 105. Defendant Gordon was the only defendant who attempted to respond to this Order. Gordon, however, has refused to comply with the Court's directions, and has instead contended

that the government is not entitled to discovery from him since all the information sought is a matter of public record. Doc. 112.

The government filed its motion for summary judgment on February 27, 2006, pointing out that defendants had failed to submit any evidence of an underlying commercial relationship or judgment from any jurisdiction supporting the purported "liens" and UCC Financing Statements which defendants have forwarded to various governmental entities for filing. Doc. 118.

## II. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure requires a court to enter summary judgment where the record, taken as a whole, establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "An issue of fact is 'material' if it might affect the outcome of the case under the governing laws. . . . It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baker v. Sears, Roebuck & Co., 903 F.2d 1515, 1518 (11th Cir. 1990)(citations omitted).

The moving party "always bears the initial responsibility of informing the [trial] court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has shown that the party bearing the burden of proof at trial lacks evidence on an essential element of his claim, the burden of production shifts to the nonmoving party "to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Rule 56(e)).

"Although reasonable inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, that party 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment' to show that there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Products Div., 932 F.2d 1384, 1387 (11th Cir.), cert. denied, 502 U.S. 925 (1991)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)). A mere scintilla of evidence supporting the non-moving party's position will not fulfill its burden. Walker v. Darby, 911

F.2d 1573, 1577 (11th Cir. 1990). The Court must consider the entire record in the case, not just those portions of the record which have been singled out for attention by the parties. Baker, 903 F.2d at 1515.

## III. Analysis

"It is by now established beyond dispute that the United States may request the assistance of Article III courts to protect its officials from attempts at harassment, intimidation, and extortion in the form of 'liens' commonly filed by . . . prisoners." United States v. Barker, 19 F. Supp. 2d 1380, 1383 (S.D. Ga. 1998). Many courts have considered "liens" identical to those at issue in the instant case, and in each instance the courts have found such purported "liens" to be invalid. See, e.g., United States v. McKinley, 53 F.3d 1170, 1171-1172 (10th Cir. 1995); United States v. Reeves, 782 F.2d 1323, 1326 (5th Cir. 1986); Ryan v. Bilby, 764 F.2d 1325, 1327 (9th Cir. 1985); United States v. Davis, 2006 WL 2238457, *2 (E.D. Tex. 2006). In all of the cases involving such "liens," prisoners have attempted to exact revenge on the public officials that the prisoners hold accountable for their incarceration, and each court has recognized the

absurdity and maliciousness of such a practice. In fact, one court has commented that "[t]o read these documents . . . is to recognize the fundamental frivolity of the legal tenets espoused therein. We are not familiar with a citizen-customer's authority to exact a consensual commercial lien from a public official, but it is a power that has no mooring in either federal or state law." McKinley, 53 F.3d at 1171-72.

This Court has previously addressed similar baseless "liens" filed by federal inmates and has found them void and with no legal effect. See United States v. Barker, 19 F. Supp. 2d 1380 (S.D. Ga. 1998). In Barker, the Court explained that in the "ridiculous world of these defendants, any federal official who rules against the defendants or who takes a position adverse to the defendants has breached his duty to the public and can be sued under [a] mysterious social contract." Id. at 1383. The defendants in Barker, as the defendants in the instant case, filed "liens" against various federal officials, including judges, prosecutors, and anyone else believed to have wronged them in some way, but provided "no statutory, constitutional, or common law support for the validity of these purported liens." Id. The Court thus found that the practice of filing such liens "unduly interfer[ed]

9

with the government's ability to perform its duties," since "[p]ublic officials subject to harassing and malicious filings such as the liens at issue in this case cannot effectively perform their duties." Id. at 1384. The Court therefore declared all the liens filed by the defendants null and void and without any legal effect. Id.

No federal or state law permits an individual citizen to file a lien on the property of a public official simply because he believes the official has failed to fulfill his duties to the public or feels aggrieved in some manner. Rather, it is necessary to first secure a judgment against another individual from a court of competent jurisdiction before filing such a lien with any governmental entity. The "liens" filed by defendants in the instant case, just as the numerous similar "liens" filed by prisoners in other jurisdictions, lack any basis in federal or state law and are merely intended to harass the federal officials against whom they are filed, distract them from their official duties, and consume resources of the United States that could otherwise be allocated elsewhere. Defendants have offered no evidence of any legitimate basis for any of the "liens" and other instruments they have filed. Accordingly, the government's motion for summary judgment should

be GRANTED.

## IV. Conclusion

Defendants have failed to demonstrate that any issue of material fact exists in this case. The liens filed by defendants are utterly frivolous, for they lack any basis in law or in fact. The government's motion for summary judgment should be GRANTED. All remaining outstanding motions should be DENIED as moot.

All liens or other instruments which defendants have submitted for filing in any federal or state court, agency, or other governmental entity purporting to attach, encumber, or otherwise affect the assets of any person should be deemed invalid, null, void, and of no legal import. Furthermore, all such liens and other instruments should be expunged from the public record. Upon adoption of this Report and Recommendation, the government should contact the appropriate official whose court, agency, or department has received any such lien and provide that individual with a copy of the Order declaring such lien to be invalid, so that all such liens may be expunged. Defendants should be directed to notify the government

immediately of any other liens, UCC Financing Statements, or other instruments, not already addressed in this action, purporting to create a debt between themselves and any public official that defendants have attempted or caused to be filed, whether under their own names or any alias, with any federal or state court or other governmental entity.

The vigor with which defendants have filed such "liens" reflects a deep-seated determination to harass the federal officials and other individuals who they feel have somehow wronged them. The multitude of frivolous filings that defendants have submitted to the Court in the instant action further emphasizes defendants' maliciousness and their intent to pursue a vendetta against the public officials who have done nothing to defendants other than discharge their duties by handling defendants' criminal cases. Accordingly, defendants, their agents, and any others in active concert or participation with them should be **PERMANENTLY ENJOINED** from filing any other liens, UCC Financing Statements, or other similar instruments in any federal or state court, agency, or department, or with any other person, entity, corporation, credit agency, or governmental unit without prior written authorization from this Court.

This injunction should extend to the filing by any defendant of any IRS forms that suggest suspicious transactions or request taxpayer identification information for any person. A violation of this injunction will be considered a contempt of this Court and will subject defendants to appropriate sanctions.[2]

The government seeks to recover its costs in bringing this action, including any fees incurred in terminating the financing statements. As defendants have maliciously persisted in filing these clearly frivolous liens, the government's request should be granted. The government should submit a brief detailing their reasonable expenses incurred in pursuing this action, and the prison officials who have custody of the defendants should be required to submit certified copies of their inmate account statements for

---

[2] For example, any fine imposed by this Court against an inmate would become part of that inmate's financial plan developed pursuant to the Inmate Financial Responsibility Program. 28 C.F.R. § 545.10. Under § 545.10(d), the following consequences "shall ordinarily result" from an inmate's failure to comply with the provisions of his financial plan: (1) notification of the Parole Commission; (2) ineligibility for furloughs, UNICOR assignments, certain pay incentives, community-based programs, release gratuity, and assignment to work details outside the facility; (3) denial of permission to purchase "special purchase items;" and (4) quartering in the lowest housing status. The Court may also order incarceration to assure compliance, even for an individual who is already incarcerated. 28 C.F.R. § 522.11(d). A civil contempt order, therefore, may have the effect of increasing the amount of total time a defendant spends in prison.

consideration by the District Judge.

**SO REPORTED AND RECOMMENDED** this 30TH day of August, 2006.

*[signature]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA